**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RAFAEL SOLANO,

                                        Plaintiff,                    9:20-cv-01378 (BKS/ML)

v.

THE STATE OF NEW YORK; THE WARDEN OF
CLINTON CORRECTIONAL FACILITY;
CORRECTION OFFICER A. AUBIN; CORRECTION
OFFICER BEZIO; CORRECTION OFFICER TAFT; and
CORRECTION OFFICERS "JOHN DOE I-V,"

                                        Defendants.

**Appearances:**

*For Plaintiff:*
John K. Kouroupas
Greenberg & Stein, P.C.
360 Lexington Avenue, Suite 1501
New York, New York 10017

*For Defendants:*
Letitia James
Attorney General of the State of New York
William E. Arnold, IV
Assistant Attorney General
300 South State St., Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

        Plaintiff Rafael Solano brings this action under 42 U.S.C. § 1983 and state law against

Defendants New York State, the "Warden of Clinton Correctional Facility," Correction Officers

A. Aubin, Bezio, Taft, and "John Doe I-V," asserting violations stemming from an alleged

incident of excessive force on November 9, 2017 when Plaintiff was incarcerated at Clinton

Correctional Facility ("Clinton"). (*See generally* Dkt. No. 1). The Complaint contains twelve

cause of action: (1) unlawful search and seizure in violation of the Fourth Amendment and New

York State Constitution (First Cause of Action); (2) false arrest and false imprisonment in

violation of the Fourth and Fourteenth Amendments (Second Cause of Action); (3) assault and

battery in violation of state law (Third Cause of Action); (4) excessive force in violation of the

Fourth and Fourteenth Amendments (Fourth Cause of Action); (5) malicious prosecution in

violation of the Fourth and Fourteenth Amendments (Fifth Cause of Action); (6) denial of the

right to a fair trial in violation of the New York State Constitution and New York Civil Rights

Law (Sixth Cause of Action); (7) denial of the right to a fair trial in violation of the Sixth and

Fourteenth Amendments (Seventh Cause of Action); (8) failure to intervene in violation of the

Fourth and Fourteenth Amendments (Eighth Cause of Action); (9) malicious abuse of process

(Ninth Cause of Action); (10) negligent hiring, retention, and supervision in violation of New

York law (Tenth Cause of Action); (11) municipal liability under *Monell*[1] (Eleventh Cause of

Action); and (12) deliberate indifference to safety and failure to protect in violation of the

Fourth, Sixth, Eighth, and Fourteenth Amendments as well as 42 U.S.C. §§ 1981, 1985, 1986,

and 1988 (Twelfth Cause of Action). (*Id.*). Plaintiff sues Defendants in their individual and

official capacities and seeks compensatory and punitive damages, as well as an award of costs

and attorneys' fees. (*Id.*). Presently before the Court is Defendants' motion to dismiss under Rule

12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 6, at 1). Plaintiff opposes

Defendants' motion. (Dkt. No. 15, at 1). For the reasons discussed below, Defendants' motion is

granted in part and denied in part.

---

[1] *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978).

## II.     RELEVANT FACTS[2]

From August until November of 2017, "correction officers" at Clinton Correctional Facility threatened Plaintiff, who was an inmate at Clinton, "with violence." (Dkt. No. 1, ¶ 38). Plaintiff "was in great fear and contacted family members and friends who informed the New York State Department of Corrections in Albany of said threats." (*Id.* ¶ 39). "Correction Officers" at Clinton "then conspired to hurt the Plaintiff in order to retaliate against him for these complaints," which led to an attack on November 9, 2017. (*Id.* ¶ 41).

On November 9, 2017, Plaintiff was in the library; at approximately 11:10 a.m., "library staff made an announcement to all . . . inmates in the general library that it was time for them to go back to their cells." (*Id.* ¶¶ 42–43). "The library announcement was followed by an alarm indicating an incident had occurred." (*Id.* ¶ 44). Defendant correction officer A. Aubin directed the inmates in the library to move to the hallway. (*Id.* ¶¶ 43–45). He then told the inmates to sit down on a bench. (*Id.* ¶ 45). Aubin knew that Plaintiff had injured his back, and that this injury made it difficult for him to sit and stand quickly. (*Id.* ¶ 46). Plaintiff complied with the order and sat down on the bench. (*Id.*). Aubin directed the inmates to stand and re-enter the library, and Plaintiff complied.  (*Id.* at 7).

Aubin then told Plaintiff to leave the library alone. (*Id.* ¶ 48). Aubin "escorted [Plaintiff] to the hallway to an elevator and instructed [Plaintiff] to put his hands against the wall." (*Id.* ¶ 49). Plaintiff "complied with said orders." (*Id.*). Aubin then punched Plaintiff in the head and stated: "Fuck your back, when I tell you to sit down, you sit down as fast as I tell you to sit down," and struck Plaintiff "in the face multiple times." (*Id.* ¶ 51). Aubin "and another Officer,

---

[2] The facts are drawn from Plaintiff's Complaint. All facts in the Complaint are assumed to be true, and all reasonable inferences have been drawn in Plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

whose identity is unknown . . . then threw Plaintiff onto the floor" and subjected him to "multiple assault and batteries to his back by kick[ing]" him. (*Id.* ¶ 52).

Following this incident, based on the "false, misleading or incomplete statements" of Defendant Correction Officers Aubin, Bezio, and Taft, who, along with the John Doe Defendants, "signed incident reports and Use of Force Reports . . . falsely accusing [Plaintiff] of false charges," Plaintiff was charged with Violent Behavior, Creating a Disturbance, Assault on Staff, Interference with Employee, and Refusing a Direct Order. (Dkt. No. 1, ¶ 53). Aubin, Bezio, and Taft "arrested," and "illegally searched" Plaintiff. (*Id.* ¶ 57). The Warden, Aubin, Bezio, Taft, and the John Doe Defendants falsely accused Plaintiff of false charges and "conveyed the aforementioned false, misleading and incomplete information . . . to have Plaintiff[] prosecuted." (*Id.* ¶¶ 60, 65). Plaintiff appeared at a Superintendent Hearing on November 17, 2017 to dispute the charges against him. (*Id.* ¶ 2). Plaintiff filed a grievance on December 19, 2017. (*Id.* ¶ 8).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (*quoting Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (*citing ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d at 98)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

Defendants argue that Plaintiff's complaint should be dismissed in its entirety, because 1) the Eleventh Amendment bars claims against the State of New York and individual defendants in their official capacities; 2) Plaintiff failed to exhaust his administrative remedies; 3) the Complaint fails to allege the personal involvement of each Defendant in the alleged constitutional violations; 4) the claims for unlawful search and seizure, false arrest, false imprisonment, malicious prosecution, excessive force, denial of the right to a fair trial, and malicious abuse of process all fail to state a plausible claim for relief; and 5) New York Correction Law § 24 bars Plaintiff's state law claims against correction officers. (*See generally* Dkt. 6-3.)

### A.   Materials Outside the Complaint

Defendants have submitted a copy of "Plaintiff's grievance packet (SUL-23889-17), filed on December 19, 2017," in support of their motion to dismiss. (Dkt. Nos. 6-1, 6-2). Defendants argue that the grievance packet demonstrates that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") by failing to mention the involvement of any other correction officers in the alleged excessive force incident. (Dkt. No. 6-3, at 8–11); 42 U.S.C. § 1997e. The grievance packet is not attached as an exhibit to the Complaint; thus, as a preliminary matter, the Court must decide whether to consider it in resolving this motion.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)).

Even where a document is deemed "'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (quoting *DiFolco*, 622 F.3d at 111). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134). "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* Thus, "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

Here, the Complaint states, without elaboration, that Plaintiff "filed a grievance on December 19, 2017." (*See* Dkt. No. 1, at 2). Courts have found grievance documents to be incorporated by reference or integral to a complaint that alleges having filed a grievance. *See, e.g., Gunn v. Annucci*, No. 20-cv-02004, 2021 WL 1699949, at *3 (S.D.N.Y. April 29, 2021) ("[T]he Court may consider the documents concerning Plaintiff's exhaustion of administrative remedies because he pled affirmatively that he tried to grieve his exposure to cold temperatures

from April 15, 2017 to May 15, 2017 and that he appealed the denial of the grievance . . . Documents associated with that grievance are, therefore, integral to and referenced in the Complaint."); *Sanchez v. Velez*, No. 08-cv-1519, 2009 WL 2252319, at *1 n.1, 2009 U.S. Dist. LEXIS 64744, at *2 n.1 (S.D.N.Y. July 23, 2009) ("Because plaintiff's grievances are referenced in the complaint, the grievance documents are incorporated by reference and properly considered on a motion to dismiss.") (citing *Sloane v. Mazzuca*, No. 04-cv-8266, 2006 WL 3096031, at *2 n.9, 2006 U.S. Dist. LEXIS 79817, at *7 n.9 (S.D.N.Y. Oct. 31, 2006) ("Plaintiff's misbehavior reports, grievances, and grievance appeals are all either incorporated by reference or attached as supplemental exhibits to the Amended Complaint.").

Furthermore, Plaintiff does not object to the inclusion of the grievance packet or contest its authenticity. Plaintiff's counsel submitted an affirmation stating that the grievance records were attached to Defendants' motion, and Plaintiff cited to, and relied on the grievance in his opposition to the motion to dismiss. (Dkt. No. 15, at 1; Dkt. No. 15-1, at 10, 12). Plaintiff argued that he filed two previous grievances "concerning the matter" both of which were unaddressed, in support of his claim that the grievance process was unavailable. (Dkt. No.15-1, at 10, 12; Dkt. No. 6-2, at 6). In light of the reference made to the grievance in Plaintiff's complaint, applicable case law, the acquiescence of both parties to the consideration of the grievance packet, and Plaintiff's reliance on the packet in his opposition, the Court will consider the grievance packet in resolving the present motion.

### B.    Exhaustion of Administrative Remedies

Defendants argue that, except for the excessive force claim as it relates to Defendant Aubin, each of Plaintiff's federal claims should be dismissed because he failed to exhaust the administrative remedies available to him through grievance procedures before filing his complaint. (Dkt. No. 6-3, at 8–11). Plaintiff responds that to the extent he did not exhaust his

administrative remedies, it is because the grievance process was unavailable to him. (Dkt. No. 15-1, at 9–13).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules.[3] *Jones v. Bock*, 549 U.S. 199, 218–19 (2007). The PLRA contains one "textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id*. The Second Circuit has explained that "an administrative remedy may be unavailable when": (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859–60).

---

[3] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The grievance procedure in New York is a three-tiered process. The prisoner must first file a grievance with the IGRC. *See* 7 N.Y.C.R.R. § 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the superintendent of the facility. *Id.* § 701.5(c). Adverse decisions at the superintendent's level may be appealed to CORC. *Id.* § 701.5(d).

Because "[f]ailure to exhaust administrative remedies is an affirmative defense," it is "not a pleading requirement." *Id.* at 122. Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* (quoting *Jones*, 549 U.S. at 216). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.*

Here, while the December 19, 2017 grievance only complains of an assault by Defendant Aubin, it does refer to two prior grievances that Plaintiff filed, but were never responded to by Clinton. (Dkt. No. 6-2, at 6). Plaintiff argues that the grievance process was unavailable because his first two grievances went unanswered. (Dkt. No. 15-1, at 12-13). While Defendants note that Plaintiff's December 19, 2017 grievance was acted upon, and that the December 19 grievance is described as a "*refil[ing]* of [Plaintiff's] grievance in this matter," (Dkt. No. 6-2, at 6), there is nothing in this record reflecting the substance of Plaintiff's first two grievances. Based upon the limited record before the Court, i.e., the face of the Complaint and the grievance packet incorporated by reference, it is not clear that Plaintiff filed to satisfy the PLRA exhaustion requirement. Defendants' motion to dismiss Plaintiff's federal claims for failure to exhaust administrative remedies at this stage of the proceedings is therefore denied. The Court expresses no opinion on the viability of a motion to dismiss for failure to exhaust following discovery on that issue.

### C. Eleventh Amendment Immunity

#### 1. The State of New York

In their motion to dismiss, Defendants argue that "any claim asserted against the State of New York . . . must be dismissed on the basis of sovereign immunity under the Eleventh

Amendment." (Dkt. No. 6-3, at 7). In his response, Plaintiff "agrees that the State of New York is not a proper defendant pursuant to the Eleventh Amendment." (Dkt. No. 15-1, at 8).

Sovereign immunity bars a suit in federal court against a state, absent the state's consent to suit or congressional abrogation of immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996); *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997). "New York has not waived its immunity, nor has Congress abrogated it." *Jackson v. Ramirez*, 691 F. App'x 45, 46 (2d Cir. 2017) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39 (2d Cir. 2017)); *see also Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 246 (S.D.N.Y. 2020) ("Congress did not abrogate the States' sovereign immunity when it enacted §§ 1983 and 1985, and New York has not waived its immunity." (citing *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010))). Thus, the causes of action brought against New York State must be dismissed.

### 2.    Individual Defendants

In his Complaint, Plaintiff sues Warden of Clinton Correctional Facility, and correction officers Aubin, Bezio, Taft, "individually and in their capacities as officers." (Dkt. No. 1, at 1). In their motion to dismiss, Defendants argue that "any claim asserted against . . . any of the individual Defendants in their official capacities must be dismissed on the basis of sovereign immunity." (Dkt. No. 6-3, at 7). In his response, Plaintiff agrees that "the Eleventh Amendment bars claims against the defendants in their official capacities." (Dkt. No. 15-1, at 8).

The Eleventh Amendment divests federal courts of subject matter jurisdiction over claims for damages against state officials in their official capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 552, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit

against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Thus, any claim against Defendants Warden of Clinton Correctional Facility, or correction officers Aubin, Taft, or Bezio in their official capacities, must be dismissed.

### D.    Group Pleading and Personal Involvement

Defendants argue that the Complaint is largely comprised of impermissible "group pleading," and that each cause of action except the excessive force claim against Aubin should thus be dismissed. (Dkt. No. 6-3, at 12–13). Defendants Warden, Aubin, Bezio, and Taft argue that the Complaint fails to allege their personal involvement as to the unlawful search and seizure, false arrest and imprisonment, malicious prosecution, right to fair trial, failure to intervene, malicious abuse of process, and deliberate indifference to safety. (Dkt. No. 6-3, at 11–13). Defendants Warden, Bezio and Taft further argue that the Complaint fails to allege their personal involvement with respect to the alleged use of excessive force. (*Id.*).

Group pleading is generally impermissible as a violation of Federal Rules of Civil Procedure ("FRCP") notice requirements. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598  (E.D.N.Y. Mar. 31, 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); *see also Holmes v. Allstate Corp.*, No. 11-cv-1543, 2012 WL 627238, at *7, *22 , 2012 U.S. Dist. LEXIS 24883, at *69 (S.D.N.Y. Jan. 27, 2012) ("[FRCP] 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."), *report-recommendation adopted*, 2012 WL 626262, 2012 U.S. Dist. LEXIS 24903 (S.D.N.Y. Feb. 27, 2012); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (explaining that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails to satisfy minimum "fair notice" standard of FRCP Rule 8).

Furthermore, "the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016); *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). The Second Circuit recently clarified that "there is no special rule for supervisory liability" and explained that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). As discussed below, with the exception of the excessive force claim against Aubin, the Complaint not only fails to distinguish the conduct of the individual Defendants but fails to allege their personal involvement in the alleged constitutional violations.

### 1.    Defendant Warden

According to the Complaint, "Warden was the highest-ranking NYSDOC employee at the Clinton Correctional Facility, and was responsible for the supervision, oversight, and discipline of the uniformed staff in Clinton" as well as for "the care, custody, and control of all individuals incarcerated in Clinton." (Dkt. No. 1, ¶ 16). The Complaint's remaining allegations list the Warden as one of the "Defendants," who committed various acts, thus failing to provide fair notice of any claim against the Warden or any act the Warden personally did. Moreover, the alleged conduct is vague and conclusory; Plaintiff asserts legal conclusions without supporting facts. The Complaint alleges, for example, that "Defendants," including the Warden and seven other Defendants, were "fully aware" Plaintiff committed no crimes or violations but fabricated an observation to justify Plaintiff's conviction; signed an incident and use of force report falsely

accusing Plaintiff; conveyed false information, "suppressed evidence," fabricated evidence, and engaged in fraud and perjury; "failed to intervene" when he observed others using excessive force." (*Id.* ¶¶ 59–60, 64–69).[4]

"In addressing the sufficiency of a complaint[, the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013); *see Iqbal*, 556 U.S. at 678, 129 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As the Complaint alleges no facts regarding any action the Warden took in connection with the alleged use of force on November 9, 2017, or the subsequent charges, it fails to allege a plausible § 1983 claim against the Warden. Plaintiff's argument that Complaint "alleges a degree of involvement beyond . . . merely being in the chain of command," is without merit. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Plaintiff has therefore failed to plausibly plead the Warden's personal involvement in any alleged infringement of his constitutional rights.

### 2.    Defendants Bezio and Taft

The allegations against Defendants Bezio and Taft are similarly defective. The Complaint alleges that "Defendants, including Aubin, Bezio, and Taft, provided false, misleading or incomplete statements concerning their observations of the [excessive force] incident with

---

[4] The Court notes that an allegation that a defendant signed false incident and use of force reports, without more, is insufficient to state a cause of action. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.").

plaintiff" and in support of the charges of violent behavior, creating a disturbance, assault on staff, interference with employee, and refusing a direct order. (Dkt. No. 1, ¶ 53). Bezio and Taft were among the approximately seven Defendants who, inter alia, allegedly signed "incident reports and a Use of Force Report . . . knowingly and falsely accusing [Plaintiff] of false charges" and "illegally searched" Plaintiff. (Dkt. No. 1, ¶¶ 57–58, 60). For the same reasons set forth above regarding the Warden, Plaintiff has failed to plausibly plead that Bezio and Taft "through the[ir] . . . own individual actions," violated the Constitution. *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

### 3.    Defendant Aubin

Defendants argue that "with the exception of the Fourth Cause of Action against Defendant Aubin," the Complaint fails to allege the personal involvement of each Defendant. (Dkt. No. 6-3 at 13). Although the "Factual Charges" section of the Complaint does outline how Aubin was involved in the excessive force incident with Plaintiff, the causes of action contain allegations against Defendant Aubin that are identical to those against Defendants Bezio and Taft and fail for the same reasons. (Dkt. No. 1 at 6–7, 14–20). Therefore, the Court finds that the Complaint fails to allege facts from which to infer Defendant Aubin's personal involvement in all but the excessive force claim. Accordingly, with the exception of the excessive force claim against Defendant Aubin, all § 1983 claims are dismissed.[5]

---

[5] In addition to the failure to allege personal involvement, there are no facts from which it could be inferred that any of the individual Defendants was in a position where he could have intervened to prevent the alleged assault. *See Henry v. Dinelle,* No. 10-cv-456, 2011 WL 5975027, at *4, 2011 U.S. Dist. LEXIS 136583, at *12–13 (N.D.N.Y. Nov. 29, 2011) (explaining that failure to intervene claim requires a showing that the defendant had "a realistic opportunity to intervene and prevent the harm"). Nor are there facts from which it could be plausibly inferred that any Defendant acted with "deliberate indifference to a substantial risk of serious harm to an inmate." *Leath v. County of Orange*, No. 18-cv-7318, 2021 WL 3271852, at *4, 2021 U.S. Dist. LEXIS 142716, at *8 (S.D.N.Y. July 30, 2021). In addition, Plaintiff's § 1983 search and seizure, false arrest and imprisonment, malicious prosecution, right to a fair trial, and malicious abuse of process claims suffer from substantive deficiencies and are subject to dismissal for failure to state a claim.

### E.      First Amendment Retaliation

In his response to Defendants' motion to dismiss, Plaintiff asserts that, in his Complaint, he "sufficiently state[d] a 1983 retaliation cause of action." (Dkt. No. 15-1, at 19). Defendants counter in their Reply that, because Plaintiff did not list retaliation as a cause of action in his Complaint, he cannot then raise this claim in his Response. (Dkt. No. 16, at 9) ("Plaintiff appears to assert a new First Amendment retaliation claim in Point VIII of his opposition . . . . Once again, a First Amendment retaliation claim is not asserted in the Complaint."). They argue that "a represented party may not amend his/her pleadings and/or assert new claims through opposition briefs to a dispositive motion," and therefore, "Plaintiff's attempts to do so in this action must be rejected." (*Id.* at 9–10).

---

Plaintiff's claim that Defendants violated Plaintiff's Fourth Amendment "right to be free from unreasonable searches and seizures," (Dkt. No. 1, ¶ 86), fails. While "inmates retain a limited right to bodily privacy under the Fourth Amendment," in considering an isolated claim that this right was violated, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Harris v. Miller*, 818 F.3d 49, 57-58 (2d Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. at 520, 559 (1979)); *see also Flood v. Cappelli*, No. 18-cv-3897, 2019 WL 3778736, at *9, 2019 U.S. Dist. LEXIS 135330, at *26 (S.D.N.Y. Aug. 12, 2019) (granting motion to dismiss Fourth Amendment unreasonable search claim, explaining that the "Plaintiff has not pled any facts to suggest that the alleged search was unreasonable or unrelated to legitimate penological interests").

Plaintiff's false arrest and malicious prosecution claims are likewise deficient as there are no allegations that his "period of incarceration was lengthened as a result of new charges brought against him while he was in custody." *Parker v. City of New York*, No. 05-cv-1803, 2008 WL 110904, at *9, 2008 U.S. Dist. LEXIS 791, at *25–26 (S.D.N.Y. Jan. 7, 2008) (granting summary judgment explaining that "[a] plaintiff does not have a claim for false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests").

Plaintiff's Sixth Amendment fair trial claim fails as it appears to center on internal prison disciplinary charges, (*see, e.g.*, Dkt. No. 1, ¶ 64 (outlining charges against Plaintiff including, "Assault on Staff" and "Refusing a Direct Order")), and the Complaint contains no allegations of criminal proceedings. *See Sash v. Zenk*, 439 F.3d 61, 63 (2d Cir. 2006) (Sotomayor, J.) ("[P]rison disciplinary hearings are not treated as "criminal" for purposes of the Sixth Amendment.").

As the Complaint fails to allege "any collateral *objectives* beyond the typical disciplinary objectives of prison sanctions, Plaintiff fails to state a claim for abuse of process." *Fusco v. County of Putnam, New York*, No. 15-8132, 2018 WL 1889070, at *12, 2018 U.S. Dist. LEXIS 65444, at *31–32 (S.D.N.Y. 2018).

Finally, the Court notes that Plaintiff failed to respond to Defendant's motion to dismiss his malicious prosecution, denial of fair trial, and deliberate indifference to safety claims and thus appears to have abandoned these claims. *See, e.g.*, *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 181 n.15 (S.D.N.Y. 2014) (deeming two claims waived where the plaintiffs, in their opposition, did not contest motion to dismiss those particular claims).

In *Quinones v. City of Binghamton*, the Second Circuit found that a District Court committed reversible error when it "declined to consider [Plaintiff's] discrimination claim because it was not 'enumerated' in the complaint" where the complaint's factual allegations "sufficiently 'informed [Defendants] of the factual basis for' a discrimination claim despite [Plaintiff's] failure to enumerate it as a separate cause of action." 997 F.3d 461, 468–69 (2d Cir. 2021). Here, while Plaintiff does not allege a cause of action for retaliation, Plaintiff stated on the first page of his Complaint that "defendants . . . committed multiple assault and batteries to plaintiff's person *in retaliation for* complaints plaintiff made to The New York State Department of Corrections." (Dkt. No. 1, at ¶ 2) (emphasis added); *see also* Dkt. No. 1, at ¶ 41 ("Corrections Officers . . . conspired to hurt plaintiff in retaliation for his complaints, which led to the instant attack on plaintiff.").

Plaintiff, however, has failed to plausibly allege a retaliation claim. In addition to the group pleading problem, and Plaintiff's failure to identify any individual Defendant who is personally responsible, Plaintiff has not pled facts from which it could be plausibly inferred that the excessive force incident was in retaliation for his complaints. Plaintiff alleged that he was "threatened with violence" by *unidentified* corrections officers, from August 2017 to November 2017; that his family made complaints to DOCCS; and that *unidentified* "Correction Officers at CCF then conspired to hurt plaintiff in retaliation for his complaints," leading to the November 9, 2017 incident. (*Id.* at ¶ 41). There are no facts from which it could be plausibly inferred that any Defendant was aware of Plaintiff's complaints or that the complaints played a substantial part in the assault. *See Gilmore v. Karandy*, No. 20-cv-542, 2020 WL 4673896, at *4, 2020 U.S. Dist. LEXIS 144834, at *8–9 (N.D.N.Y. Aug. 12, 2020); *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003). Accordingly, the claim for retaliation is dismissed.

16

## F.     Fourth Amendment Excessive Force

Defendants seek dismissal of Plaintiff's Fourth Amendment excessive force claim on the ground that Plaintiff is a post-conviction prison inmate and any claim of excessive force must be brought under the Eighth Amendment. (Dkt. No. 6-3, at 19). Plaintiff appears to acknowledge that any excessive force claim must be brought under the Eighth Amendment, but argues that this "inartful[]" pleading does not provide a basis for dismissal. (Dkt. No. 15-1, at 15). The Court agrees. As the Supreme Court has explained: "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (stating "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim") (citations omitted). Accordingly, the Court construes Plaintiff's § 1983 excessive force claim as a claim under the Eighth Amendment, and Defendants' motion to dismiss that claim as to Defendant Aubin is denied.

## G.     State Law Claims - New York Correction Law § 24

The individual Defendants seek dismissal of Plaintiff's state law assault and battery claim as well as claims Plaintiff brings under New York Civil Rights Law and New York State Constitution on the ground that New York Correction Law § 24 precludes state law claims against them in their personal capacities. (Dkt. No. 6-3, at 16–19). Plaintiff has not responded to this argument.

New York Corrections Law § 24(1) provides in pertinent part:

> No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

These provisions have been held to preclude claims against correction officers in their personal capacities in any court "arising out of the discharge of their duties," and mandate that any "claim for damages . . . in the discharge of the duties of any officer or employee [of DOCCS], shall be brought and maintained in the court of claims as a claim against the state." *Crump v. Ekpe*, No. 07-cv-1331, 2010 WL 502762, at *18, 2010 U.S. Dist. LEXIS 10799, at *60 (N.D.N.Y. Feb. 8, 2010) (citing *Baker v. Coughlin*, 77 F.3d 12, 14–15 (2d Cir. 1996)).

Under New York law, an employee's act is within the scope of employment if "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (citing *Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979)). Among the factors the court must consider are "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Id.* (citing *Riviello,* 391 N.E.2d at 1281).

Here, the Complaint alleges the Defendant Warden and Correction Officers worked at Clinton and were on duty at the time of the alleged violations, all of which are alleged to have occurred inside the Clinton facility and as part of the Clinton disciplinary process. (Dkt. No. 1, ¶ 16 (alleging Warden "was responsible for the supervision . . . of the uniformed staff in Clinton" and was acting as Warden "[w]hile carrying out the [acts] and omissions alleged herein"), ¶ 24 (alleging Defendant Correction Officers were acting in their capacities as Correction Officers "at all times"), ¶¶ 51–52 (alleging that assault occurred in a hallway outside Clinton's general library), ¶¶ 55, 59, 63 (alleging that the individual Defendants signed false incident and use of

force reports leading to the allegedly false charges and "Superintendent Hearing")). As alleged, these actions "are generally foreseeable in the execution of Defendant Correction Officers' duties." *Ames v. New York Dep't of Corr. & Cmty. Supervision*, No. 12-cv-01487, 2015 WL 4126326, at *14, 2015 U.S. Dist. LEXIS 91698, at *32–33 (N.D.N.Y. Mar. 24, 2015) (citing *Riviello,* 47 N.Y.2d at 304 (stating that where the tortious conduct is a natural incident of employment, it can be generally foreseeable)). Indeed, there are no allegations that would allow a plausible inference that the individual Defendants were acting outside the scope of their employment at the time of the alleged conduct.

Courts have routinely found that the use of excessive force against an inmate does not render the conduct outside of the scope of employment, unless the force was for purely personal reasons and a "substantial departure from the normal methods of performing his duties." *See Gore v. Kuhlman*, 630 N.Y.S.2d 141, 142 (3d Dep't 1995) ("It is well settled that conduct which occurs during the course of employment will not be considered to have occurred within the scope of employment if, for purely personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties"); *see also Ierardi*, 119 F.3d at 188 (distinguishing this case from others in which "the officers involved were endeavoring to do their job—perhaps poorly—at the time of the charged transgressions," and were therefore acting within the scope of their employment); *Ames*, 2015 WL 4126326, at *14, 2015 U.S. Dist. LEXIS 91698, at *32–33 (dismissing state law claims against the defendant correction officers on the ground that they were barred by New York Correction Law § 24, finding that the alleged inappropriate filing of misconduct reports and excessive use of force are "not departures great enough to remove [defendants'] actions from

within the scope of their employment"). Accordingly, Plaintiff's state law claims against the individual Defendants are dismissed.[6]

### H.    Leave to Amend

Plaintiff has not sought leave to amend or provided a basis to believe that there is a viable basis to amend. His claims against the State of New York and the individual Defendants in their official capacities cannot be cured with better pleading and his state law claims against the individual Defendants must be dismissed under N.Y. Correct. Law § 24. The Court therefore denies leave to amend those claims. However, to the extent Plaintiff may be able to cure the above-described defects as to the § 1983 claims against Defendants Aubin, Bezio, and Taft in their personal capacities with better pleading, the Court has provided Plaintiffs with an opportunity to seek leave to file a motion to amend the complaint.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that that Defendants' motion to dismiss (Dkt. No. 6) is **DENIED** as to the § 1983 excessive force claim (Fourth Cause of Action) against Defendant Aubin in his personal capacity, and is otherwise **GRANTED** in its entirety; and it is further

**ORDERED** that if Plaintiff seeks leave to amend the § 1983 claims against Defendants Aubin, Bezio, or Taft, he must meet and confer with Defense counsel regarding any proposed amendment, and submit a status report by October 1, 2021. In this report, Plaintiff must indicate defense counsel's position and submit a proposed amended complaint. Defendant may file a

---

[6] Defendants also point out that Plaintiff fails to respond to their arguments to dismiss several causes of action. Specifically, Plaintiff fails to respond to the causes of action for assault and battery under New York State Law, malicious prosecution under 42 U.S.C. § 1983, denial of the right to a fair trial under New York State Law, denial of the right to a fair trial under 42 U.S.C. § 1983, and deliberate indifference to safety and failure to protect. As noted in note 3, *supra*, Plaintiff appears to have abandoned these claims.

status report in response by October 15, 2021. The Court will, if necessary, schedule a telephone conference to discuss these issues and/or set a briefing schedule once the parties have filed their status reports; and it is further

**ORDERED** that if Plaintiff does not file a status report seeking leave to amend by October 1, 2021, all of the named Defendants other than Aubin will be terminated and Plaintiff's claim against Defendant Aubin under 42 U.S.C. § 1983, for excessive force in violation of the Eighth Amendment will proceed.

**IT IS SO ORDERED.**

Dated:  September 10, 2021
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge