**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RAFAEL SOLANO,

Plaintiff, 9:20-cv-1378 (BKS/ML)

v.

CORRECTION OFFICER A. AUBIN, CORRECTION OFFICER BEZIO, CORRECTION OFFICER TAFT, and CORRECTION OFFICERS "JOHN DOE I–V,"

Defendants.

---

**Appearances:**

*For Plaintiff:*
John K. Kouroupas
Greenberg & Stein, P.C.
360 Lexington Avenue, Suite 1501
New York, New York 11361

*For Defendants:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General, of counsel
300 South State Street, Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Rafael Solano brings this action under 42 U.S.C. § 1983 against Defendants Correction Officer A. Aubin, Correction Officer Bezio, Correction Officer Taft, and Correction Officers "John Doe I–V" asserting violations stemming from an alleged incident of excessive force on November 9, 2017, when Plaintiff was incarcerated at Clinton Correctional Facility

("Clinton"). (Dkt. No. 24.) The second amended complaint contains two causes of action: (1) excessive force in violation of the Eighth Amendment; and (2) failure to intervene in violation of the Eighth Amendment. (*Id.* at 6–7.) Presently before the Court is Defendants' motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 46.) Defendants argue, inter alia, that Plaintiff has not exhausted administrative remedies as to two of the Defendants—Bezio and Taft—who are alleged to have participated in the use-of-force incident that involved Defendant Aubin. Plaintiff opposes Defendants' motion. (Dkt. No. 49.) For the reasons discussed below, Defendants' motion is granted.

## II. FACTS[1]

### A. Use-of-Force Incident

On November 9, 2017, while an inmate at Clinton, Plaintiff was involved in a use-of-force incident. (Dkt. No. 46-2, ¶ 1; Dkt. No. 49-2, ¶ 1; Dkt. No. 49-1, ¶ 1; Dkt. No. 51, ¶ 1.) Defendant Officer Aubin reported that he forced Plaintiff to the ground after Plaintiff attempted to strike Officer Aubin during a pat frisk. (Dkt. No. 46-4, at 3.) According to the investigating Sergeant, Plaintiff reported that "he was assaulted by Officer Aubin" and had "nothing more to add." (*Id.* at 5.) The parties admit that Officer Bezio "placed handcuffs on Plaintiff, who was compliant," and that Officer Taft was directed by a supervisor on scene to escort Plaintiff . . . to the hospital emergency room where he was evaluated by a nurse. (Dkt. No. 46-2, ¶¶ 48, 55, 57; Dkt. No. 49-2, ¶¶ 48, 55, 57.) The nurse's report states that Plaintiff said: "I got assaulted by the

[1] These facts are drawn from Defendants' Statement of Material Facts Not in Dispute, (Dkt. No. 46-2), Plaintiff's Response to Defendants' Statement of Undisputed Facts, (Dkt. No. 49-2), Plaintiff's Counterstatement of Undisputed Facts, (Dkt. No. 49-1), and Defendants' Response to Plaintiff's Counterstatement of Undisputed Facts, (Dkt. No. 51), to the extent they are well-supported by pinpoint citations, as well as exhibits attached thereto. The Court limits its recitation of facts to those relevant to the issue of whether Plaintiff has exhausted any of his claims against Defendants Bezio or Taft or his failure to intervene claim against Defendant Aubin because, as discussed below, *infra* Section IV.B, the Court must initially resolve that issue. The facts, which are undisputed unless otherwise noted, are construed in the light most favorable to Plaintiff as the non-moving party. *See Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

officer." (Dkt. No. 46-4, at 10–11.) Plaintiff testified at his deposition that he told the nurse he was assaulted by "officers" and that the nurse should have written "officers, plural." (Dkt. No. 46-7, at 90–91.)

Because of his role in the incident, Plaintiff was given a misbehavior ticket for which he was found guilty. (Dkt. No. 46-2, ¶¶ 66–67; Dkt. No. 49-2, ¶¶ 66–67.) As a result, Plaintiff was kept in keeplock confinement for approximately thirty days. (Dkt. No. 49-1, ¶ 39; Dkt. No. 51, ¶ 39.) Plaintiff had previously filed grievances, unrelated to the November 9, 2017, incident, while under disciplinary restrictions at Clinton. (Dkt. No. 46-2, ¶ 76; Dkt. No. 49-2, ¶ 76.)

**B. Administrative Review**

**1. The Grievances Allegedly Submitted on November 23, 2017, and December 11, 2017**

Plaintiff alleges, but Defendants dispute, that Plaintiff attempted to file two grievances at Clinton about the November 9, 2017, incident: one on November 23, 2017, and one on December 11, 2017. (Dkt. No. 46-2, ¶ 88; Dkt. No. 49-2, ¶ 88; Dkt. No. 49-1, ¶¶ 40, 43–45; Dkt. No. 51, ¶¶ 40, 43–45.) Plaintiff testified that he is unsure whether he gave the grievances to correction officers to file or placed them in a grievance box himself. (Dkt. No. 46-2, ¶¶ 79–81, 85; Dkt. No. 49-2, ¶¶ 79–81, 85.) Plaintiff also testified that did not remember what he wrote in those grievances; that it "probably" had the same information as his December 19, 2017, grievance but that he was "not sure"; and that in the December 11, 2017, grievance, he wrote that he "got assaulted . . . [by] Officer Aubin and . . . the rest of the officers." (Dkt. No. 46-7, at 108–11.)

By December 11, 2017, Plaintiff was out of keeplock disciplinary confinement and back in the general population at Clinton. (Dkt. No. 46-2, ¶ 84; Dkt. No. 49-2, ¶ 84.) Incarcerated individuals can deposit their grievance complaints in a sealed envelope, addressed to the Inmate

Grievance Program Office, in an intra-facility mailbox located on their housing unit. (Dkt. 46-2, ¶¶ 70–71.) Clinton's Incarcerated Grievance Program has no record of grievances filed by Plaintiff on November 23, 2017, or December 11, 2017, and Plaintiff did not provide copies of either of his alleged grievances during discovery. (Dkt. No. 46-2, ¶¶ 81, 87–88; Dkt. No. 49-2, ¶¶ 81, 87–88.)

On December 14, 2017, thirty-five days after the November 9, 2017, incident, Plaintiff was transferred from Clinton to Sullivan Correctional Facility ("Sullivan"). (Dkt. No. 46-2, ¶ 89; Dkt. No. 49-2, ¶ 89; Dkt. No. 49-1, ¶¶ 40, 43–44; Dkt. No. 51, ¶¶ 40, 43–44.) Plaintiff claims, but Defendants dispute, that after receiving no response to his alleged November 23, 2017, grievance, Plaintiff contacted the grievance officer at Clinton about Plaintiff's initial grievance, and the grievance officer informed Plaintiff that Plaintiff had no active grievances at Clinton. (Dkt. No. 49-1, ¶¶ 44, 52; Dkt. No. 51, ¶¶ 44, 52.)

**2. The Grievance Dated December 19, 2017**

Between December 19, 2017, and December 22, 2017,[2] Plaintiff filed a grievance at Sullivan about the November 9, 2017, incident. (Dkt. No. 46-2, ¶ 90; Dkt. No. 49-2, ¶ 90; Dkt. No. 49-1, ¶ 109; Dkt. No. 51, ¶ 109; Dkt. No. 46-6.) Plaintiff wrote in the December 19, 2017, grievance that "[o]n November 9, 2017 I was assaulted by C.O. Aubin at Clinton Correctional Facility." (Dkt. No. 46-6, at 6.) Plaintiff also wrote that "[o]n November 23, 2017 while on keeplocked I filed a grievance concerning the matter and because I recieved [sic] no kind of response I filed another grievance on December 11, 2017." (*Id.*) Plaintiff also wrote that he contacted grievance personnel at Sullivan on about December 14, 2017, and was informed that

[2] The grievance is dated December 19, 2017, (Dkt. No. 46-6, at 6), but the case history and record cover sheet, the superintendent's disposition, the grievance clerk's signature of receipt, and the CORC disposition indicate that the grievance was filed on December 22, 2017, (*id.* at 2, 4–5, 10).

Clinton had no record of his grievance. (*Id.*) Plaintiff's December 19, 2017, grievance did not refer to any officer other than Defendant Aubin as having had any involvement in the incident.

An official at Sullivan interviewed Plaintiff about his December 19, 2017, grievance. (*Id.* at 8.) The interview report states that Plaintiff described how Defendant Aubin had assaulted him. (*Id.*) There is nothing in the report regarding any actions by any other officer or any claim that any other officer was present. (*Id.*) When Defendant Aubin was interviewed, he stated he was "involved in a use of force on [Plaintiff]" but that "the minimum amount of force was used to gain compliance" and he did not assault Plaintiff. (*Id.* at 9.) No other individuals were investigated in connection with Plaintiff's grievance. (*Id.* at 8.)

Plaintiff's grievance was denied by the superintendent at Sullivan, (Dkt. No. 46-2, ¶ 93; Dkt. No. 49-2, ¶ 93), and Plaintiff appealed to CORC, (Dkt. No. 46-2, ¶ 94; Dkt. No. 49-2, ¶ 94; Dkt. No. 49-1, ¶ 110; Dkt. No. 51, ¶ 110). CORC found insufficient evidence of staff malfeasance, (Dkt. No. 46-2, ¶ 95; Dkt. No. 49-2, ¶ 95; Dkt. No. 49-1, ¶ 111; Dkt. No. 51, ¶ 111; Dkt. No. 46-6, at 10), and Plaintiff subsequently filed this action.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson*, 477 U.S. at 247–48. A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The

moving party may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))). If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In ruling on a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. NW Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves

create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV. DISCUSSION

Defendants move for summary judgment on the excessive force and failure to intervene claims against Defendants Bezio and Taft; the failure to intervene claim against Defendant Aubin; and the excessive force and failure to intervene claims against the Doe Defendants. (Dkt. No. 46-1.)[3] Plaintiff opposes Defendants' motion with regard to the excessive force and failure to intervene claims against Defendants Bezio and Taft and the failure to intervene claim against Defendant Aubin. (Dkt. No. 49.)

### A. Exhaustion of Administrative Remedies

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claims against Defendants Bezio and Taft and Plaintiff's failure to intervene claims against Defendants Aubin, Bezio, and Taft because Plaintiff failed to exhaust his administrative remedies with regard to these claims. (Dkt. No. 46-1, at 12–24.) Specifically, Defendants argue that the grievance Plaintiff undisputedly filed, dated December 19, 2017, did not provide substantive notice of any claim except Plaintiff's excessive force claim against Defendant Aubin and that Plaintiff failed to substantiate his claims that he attempted to file grievances on November 23, 2017, and December 11, 2017. (*Id.*) Plaintiff argues that his grievance dated December 19, 2017, provided adequate notice of his claims and, in any event, administrative remedies were not available to him because officials failed to file his November 23, 2017, and December 11, 2017, grievances. (Dkt. No. 49, at 4–10.)

---

[3] Defendants do not move for summary judgment on the excessive force claim against Defendant Aubin. (Dkt. No. 46-1.)

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, prescribes limitations on an inmate's ability to bring civil actions with respect to prison conditions. Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *abrogated on other grounds by Ross v. Blake*, 578 U.S. 632, 639–42 (2016).

Proper exhaustion of administrative remedies is dependent on the rules and regulations of the prison in which the grievance is filed; that is, an inmate of a New York State Department of Corrections and Community Supervision ("DOCCS") facility must satisfy the requirements, including procedural and substantive requirements, set forth by DOCCS regulations to properly exhaust administrative remedies. *See Garcia v. Heath*, No. 22-367, --- F.4th ----, 2023 WL 4552579, at *1, 2023 U.S. App. LEXIS 18036, at *4 (2d Cir. July 17, 2023); *see also Hayes v. Dahlke*, 976 F.3d 259, 268 (2nd Cir. 2020) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." (alteration in original) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007))).

Failure to exhaust available administrative remedies is an affirmative defense that must be raised by the defendants. *See Jones*, 549 U.S. at 216. Therefore, the defendants "bear the initial burden of establishing the affirmative defense of non-exhaustion 'by pointing to "legally sufficient sources" such as statutes, regulations, or grievance procedures' which demonstrate that

'a grievance process exists and applies to the underlying dispute.'" *Williams v. Correction Officer Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Hubbs*, 788 F.3d at 59 (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004), *abrogated on other grounds by Ross*, 578 U.S. at 639–42).

Under DOCCS regulations, an inmate must generally submit a grievance within twenty-one days of an alleged occurrence, *see* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1), but may request an extension within forty-five days of the alleged occurrence, *see id.* § 701.6(g)(1)(i)(a). An inmate's grievance "should contain a concise, specific description of the problem and the action requested." *Id.* § 701.5(a)(2). This requirement, the Second Circuit has held, is analogous to the requirements of notice pleading. *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006); *see also Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("The PLRA's exhaustion requirement is . . . is not dissimilar to the rules of notice pleading . . . ."). "As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief[;] [a]ll the grievance need do is object intelligibly to some asserted shortcoming." *Johnson*, 380 F.3d at 697 (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Still, a "grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell*, 446 F.3d at 310. That is, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Id.* (quoting *Johnson*, 380 F.3d at 697). But a grievance need not identify parties by name, and a grievant may substantively exhaust

administrative remedies even without explicitly naming each claim later brought in court when the claim is closely related to allegations contained in the grievance. *See Espinal v. Goord*, 558 F.3d 119, 126–28 (2d Cir. 2009).

Subsequent procedural exhaustion of a filed grievance then involves three steps: (1) the grievance is reviewed and resolved by the Inmate Grievance Resolution Committee ("IGRC"), *id.* § 701.5(b); (2) the grievant appeals an adverse decision of the IGRC to the superintendent of the facility at which the grievance was filed, *id.* § 701.5(c); and (3) the grievant appeals an adverse decision of the superintendent to the Central Office Review Committee ("CORC"), *id.* § 701.5(d). Upon the rendering of CORC's decision, or if CORC fails to respond to a grievance within thirty days of its appeal under the third step of the process, the grievant has exhausted administrative remedies. *See Hayes*, 976 F.3d at 269–70.

However, DOCCS regulations except from the standard grievance procedure complaints of "harassment." *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a)(2), 701.8. "Harassment grievances" are defined as "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate," *id.* § 701.2(e), and include claims of excessive force, *see Torres v. Carry*, 691 F. Supp. 2d 366, 369–70 (S.D.N.Y. 2009). Harassment grievances undergo an expedited procedure involving direct review by the facility's superintendent. *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.8(b)–(c). If the superintendent determines that the grievance does not allege a "bona fide case of harassment," the grievance is subject to the standard grievance procedure. *Id.* § 701.8(c). If the superintendent determines that the grievance "is a bona fide harassment issue," the superintendent initiates an investigation and renders a decision, which the grievant may appeal to CORC. *See id.* §§ 701.8(d)–(f), (h). If, however, the superintendent fails

to respond within twenty-five days, the grievant may appeal to CORC. *See id.* § 701.8(g). All other relevant aspects are governed by the standard grievance procedure. *See id.* § 701.8(i).

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross*, 578 U.S. at 638. The Supreme Court in *Ross v. Blake* identified, inexhaustively, *see Williams*, 829 F.3d at 123 n.2, "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 578 U.S. at 643. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 578 U.S. at 643). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 578 U.S. at 643). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 578 U.S. at 644).

In *Williams v. Correction Officer Priatno*, the Second Circuit found that when a grievance is delivered by an inmate in a Special Housing Unit to a correction officer for filing and that grievance is never subsequently filed or answered, DOCCS "regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies." 829 F.3d at 124. "On their face," the Second Circuit held, "the regulations only contemplate appeals of grievances that were actually filed." *Id.* And under the circumstances in that case, "the grievance procedures that were technically available to [the plaintiff] so opaque and confusing that they were, 'practically speaking, incapable of use,'" and therefore, "in giving his grievance to the

correction officer, [the plaintiff] exhausted all administrative remedies that were available to him." *Id.* at 126 (quoting *Ross*, 578 U.S. at 643).

However, "mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations." *Jackson*, 2023 WL 4710869, at *6, 2023 U.S. Dist. LEXIS 65814, at *15 (quoting *Rodriguez v. Cross*, No. 15-cv-1079, 2017 WL 2791063, at *7, 2017 U.S. Dist. LEXIS 71337, at *19 (N.D.N.Y. May 9, 2017), *report and recommendation adopted*, 2017 WL 2790530, 2017 U.S. Dist. LEXIS 98707 (N.D.N.Y., June 27, 2017)). Rather, a plaintiff must provide some corroboration of a claim that a grievance was submitted, such as evidence demonstrating when the grievance was written, the content of the grievance, how the plaintiff attempted to file the grievance, or that the plaintiff followed up with prison officials on the disposition of the grievance. *See Simpson v. Price*, No. 19-cv-1413, 2022 WL 336540, at *3, 2022 U.S. Dist. LEXIS 20857, at *7–8 (N.D.N.Y. Feb. 4, 2022); *see also Stephanski v. Allen*, No. 18-cv-76, 2020 WL 806331, at *9, 2020 U.S. Dist. LEXIS 11028, at *22–25 (N.D.N.Y. Jan. 22, 2020) ("Although [the plaintiff] fails to proffer copies of the grievance(s) he attempted to file . . . , his claims are supported by evidence suggesting that he attempted to file a grievance . . . including: (1) [the plaintiff]'s deposition testimony; (2) [the plaintiff]'s letter to the . . . Grievance Committee; (3) [the plaintiff]'s letter to [a grievance supervisor]; (4) [a subsequent grievance]; and (5) [the plaintiff]'s Appeal Statement referring the Superintendent's decision to CORC for review."), *report and recommendation adopted*, 2020 WL 777268, 2020 U.S. Dist. LEXIS 26918 (N.D.N.Y. Feb. 18, 2020).

Here, Defendants have established that the grievance procedures contemplated by DOCCS regulations applied to inmates at Clinton. (Dkt. No. 46-2, ¶ 75;[4] Dkt. No. 46-16, ¶ 10.) The questions before the Court, then, are (1) whether Plaintiff exhausted these administrative remedies, and (2) if he did not, whether the remedies were available to Plaintiff within the meaning established by *Ross* and *Williams*.

**1. The December 19, 2017, Grievance**

In his December 19, 2017, grievance, Plaintiff stated that "[o]n November 9, 2017 I was assaulted by C.O. Aubin at Clinton Correctional Facility." (Dkt. No. 46-6, at 6.) The grievance contained no other factual allegations about the underlying incident. (*Id.*) Defendants argue that this is substantively insufficient to put Sullivan on notice to investigate either excessive force claims or failure to intervene claims against Defendants Bezio or Taft and to put Sullivan on notice to investigate a failure to intervene claim against Defendant Aubin. (Dkt. No. 46-1, at 21–24.) The Court agrees.

"[A] claim may be exhausted when it is closely related to, but not explicitly mentioned in an exhausted grievance," *Barnes v. Annucci*, No. 15-cv-0777, 2019 WL 1387460, at *10 (N.D.N.Y. March 12, 2019), and a grievance need not identify by name those accused of misconduct, *see Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009). But Plaintiff's grievance, which does identify by name one individual and makes no mention of the presence—let alone the actions or inaction—of any others, fails to provide the requisite notice. *See Bailey v. Weckesser*, No. 18-cv-6292, 2020 WL 1333451, at *6, 2020 U.S. Dist. LEXIS 50058, at *16 (W.D.N.Y. Mar. 23, 2020) ("Here . . . the [grievance] does not hint at the fact that more than one

[4] While Plaintiff denies this factual assertion, he does not meaningfully dispute that DOCCS grievance procedures applied at Clinton but instead reiterates that Plaintiff attempted to file two grievances but did not receive a response. (Dkt. No. 49-2, ¶ 75.)

correction officer was involved in the April 15, 2015[,] incident. It therefore did not 'provide enough information . . . to allow prison officials to take appropriate responsive measures . . . .'" (quoting *Johnson*, 380 F.3d at 697)); *Thousand v. Corrigan*, No. 15-cv-1025, 2017 WL 1093275, at *4, 2017 U.S. Dist. LEXIS 41857, at *8–9 (N.D.N.Y. Mar. 23, 2017) ("Plaintiff concedes that the grievance 'makes no mention of any other correction officer being present or taking part in the assault.' Plaintiff also conceded that his grievance made no mention of any bystander who witnessed the assault[] and did not mention any failure to protect or intervene by any correction official. In light of these and other admissions, . . . Plaintiff's grievance was insufficient to alert 'the prison officials that he was alleging some wrongdoing beyond that alleged against the individual or individuals specifically named in the grievance.'" (citations omitted)); *cf. Peele v. Donah*, No. 15-cv-317, 2016 WL 4400473, at *5–6, 2016 U.S. Dist. LEXIS 78073, at *15–19 (N.D.N.Y. June 14, 2016) (recommending denial of the defendants' motion for summary judgment where the plaintiff had failed to identify some correction officer defendants by name in his grievance but had alleged that "other officers" were involved in the incident), *report and recommendation adopted sub nom. Peele v. Donah Smith*, 2016 WL 4386019, 2016 U.S. Dist. LEXIS 108981 (N.D.N.Y. Aug. 17, 2016).

This conclusion is bolstered by the fact that Defendants Bezio and Taft were not interviewed or discussed at all in conjunction with the investigation of Plaintiff's grievance at Sullivan. (Dkt. No. 46-6, at 8.) Where a facility is not properly alerted to the existence of a claim and therefore fails to investigate it, an inmate has not substantively exhausted administrative remedies with regard to that claim. *See Albritton v. Morris*, No. 13-cv-3708, 2018 WL 1609526, at *12, 2018 U.S. Dist. LEXIS 53423, at *36 (S.D.N.Y. Mar. 29, 2018) (granting the defendants' motion for summary judgment on exhaustion grounds where, because they were not named in a

grievance, defendants "were not questioned during the investigation of Plaintiff's grievance" and defendants' names did not "appear even once in the entire grievance record"); *Peters v. Huttel*, No. 15-cv-9274, 2019 WL 6619602, at *9, 2019 U.S. Dist. LEXIS 210409, at *24-25 (S.D.N.Y. Dec. 5, 2019) ("The record is also clear that the grievance, as drafted, did not lend itself to a review of and decision on Plaintiff's failure to protect claim, as all that was addressed [during the grievance process] was his excessive force issues."); *Percinthe v. Julien*, 08-cv-893, 2009 WL 2223070, at *6, 2009 U.S. Dist. LEXIS 64552, at *24 (S.D.N.Y. July 24, 2009) ("[B]ecause the prison was not properly alerted to [plaintiff's] failure to protect claim, nor did the prison clearly investigate the claim, [plaintiff] has failed to exhaust administrative remedies with regard to that claim.").

While Defendants Bezio and Taft were part of the investigation of the use-of-force incident at Clinton, (Dkt. No. 46-4, at 7–8), this information was apparently not part of the grievance investigation at Sullivan because Plaintiff failed to indicate in his grievance that these individuals were involved. (Dkt. No. 46-6, at 6, 8.) Furthermore, an inmate's failure to notify prison officials of information relevant to potential claims during the investigation of a grievance bears on whether the grievance properly exhausted administrative remedies with regard to those claims. *See Albritton*, 2018 WL 1609526, at *12, 2018 U.S. Dist. LEXIS 53423, at *37 ("[T]he record indicates that, during an interview regarding his grievance, Plaintiff 'reiterated his complaint,' and 'offered no new information' beyond what was contained in his grievance."); *Thousand*, 2017 WL 1093275, at *4, 2017 U.S. Dist. LEXIS 41857, at *10–11 ("[I]n his grievance, Plaintiff does indicate that this grievance 'won't be as detailed as the last one, so if more details are needed, someone needs to come see me.' Although an official did 'come see' Plaintiff to interview him about the grievance, Plaintiff failed to provide any details that would

alert Great Meadow officials of the failure to intervene."). Here, when Plaintiff was interviewed at Sullivan during the grievance resolution process, he did not indicate that anyone other than Defendant Aubin was present at the incident. (Dkt. No. 46-6, at 8).

Thus, Plaintiff's December 19, 2017, grievance failed to substantively exhaust administrative remedies as to excessive force and failure to intervene claims against Defendants Bezio or Taft and the failure to intervene claim against Defendant Aubin.

**2. The Alleged November 23, 2017, and December 11, 2017, Grievances**

Defendants next argue that Plaintiff failed to substantiate his claims that he attempted to file grievances on November 23, 2017, and December 11, 2017, at Clinton. (Dkt. No. 46-1, at 14–21.) Plaintiff argues that administrative remedies were not available to him because officials at Clinton failed to file his November 23, 2017, and December 11, 2017, grievances. (Dkt. No. 49, at 6–10.)

Even assuming that Plaintiff did attempt to file a grievance at Clinton that went unfiled, he undisputedly filed a grievance regarding the November 9, 2017, use-of-force incident at Sullivan on December 19, 2017, which was exhausted. (Dkt. No. 46-2, ¶¶ 90–91, 93–95; Dkt. No. 49-2, ¶¶ 90–91, 93–95.) This fact is sufficient to defeat Plaintiff's argument that administrative remedies were unavailable to him following the use-of-force incident. *See Thousand*, 2017 WL 1093275, at *4, 2017 U.S. Dist. LEXIS 41857, at *9–10 ("Even assuming that Plaintiff did attempt to file an earlier grievance which was not received by the facility, he still timely filed a grievance regarding the alleged . . . assault by Defendant . . . , which was exhausted."). That is, even if there were a question as to whether Plaintiff attempted to file grievances at Clinton, he was nevertheless able to successfully file a grievance about the November 9, 2017, use-of-force incident, and he successfully exhausted the sole claim raised in that grievance. (Dkt. No. 46-2, ¶¶ 90–91, 93–95; Dkt. No. 49-2, ¶¶ 90–91, 93–95.) For the

reasons discussed above, that grievance was insufficient to exhaust administrative remedies as to Plaintiff's excessive force and failure to intervene claims against Defendants Bezio or Taft and failure to intervene claim against Defendant Aubin. But because administrative remedies were available to Plaintiff at Sullivan and Plaintiff availed himself of those remedies without providing notice of excessive force and failure to intervene claims against Defendants Bezio and Taft and a failure to intervene claim against Defendant Aubin, (Dkt. No. 46-6, at 6), Plaintiff failed to exhaust administrative remedies with respect to those claims. Defendant's motion for partial summary judgment is accordingly granted with respect to those claims.

**B. Doe Defendants**

Defendants argue that the Doe Defendants should be dismissed because Plaintiff has failed to identify and serve them and because the statute of limitations on claims against the Doe Defendants has run. (Dkt. No. 46-1, at 10–12.) Plaintiff does not address these arguments. (Dkt. No. 49.)[5]

Under Rule 41(b) of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." A district court also has the power to dismiss a claim for failure to prosecute sua sponte. *See Maldonado v. Bennett*, No. 17-cv-1303, 2021 WL 677845, at *9, 2021 U.S. Dist. LEXIS 31757, at *28–29 (N.D.N.Y. Feb. 22, 2021); *see also* N.D.N.Y. L.R. 41.2(a)

[5] "The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim." *Santana v. Racette*, No. 17-cv-102, 2020 WL 3412728, at *8 n.12, 2020 U.S. Dist. LEXIS 108595, at *19 n.12 (N.D.N.Y. June 22, 2020) (citing *Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 399 (N.D.N.Y. 2008)); *see also* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."). Where a party has abandoned a claim, the moving party need only meet the modest burden of demonstrating that its position is facially meritorious. *See Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 222 (N.D.N.Y. 2008), *report and recommendation adopted*.

("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge may order it dismissed.").

Here, Plaintiff was instructed on November 9, 2020, to "take reasonable steps to ascertain the[] identit[ies]" of the Doe Defendants. (Text Notice dated November 9, 2020.) On December 21, 2021, the Court issued its pretrial scheduling order, which set a discovery deadline of September 21, 2022. (Dkt. No. 30.) Discovery closed, after an extension of time, on November 21, 2022. (Dkt. No. 45.) There is no indication that any point, Plaintiff ascertained the identity of or served any Doe Defendant, and Plaintiff has not amended the second amended complaint to add any named defendant. Thus, Doe Defendants are dismissed for failure to prosecute. *See Da Mata v. City of N.Y.*, No. 21-cv-155, 2023 WL 112449, at *1 n.1, 2023 U.S. Dist. LEXIS 2133, at *2 n.1 (S.D.N.Y. Jan. 5, 2023); *Spells v. Van Hoesen*, No. 18-cv-669, 2022 WL 17584178, at *1 n.1, 2022 U.S. Dist. LEXIS 222881, at *1 n.1 (N.D.N.Y. Dec. 12, 2022). The Court further finds that dismissal of Plaintiff's claims against Doe Defendants is warranted under Rule 4(m) of the Federal Rules of Civil Procedure because Plaintiff has not offered "good cause" for his failure to effect timely service on the Doe Defendants. *See Maldonado*, 2021 WL 677845, at *10, 2021 U.S. Dist. LEXIS 31757, at *29.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for partial summary judgment, (Dkt. No. 46), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's excessive force claims against Defendants Bezio and Taft and failure to intervene claims against Defendants Aubin, Bezio, and Taft are **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendants Bezio and Taft are **DISMISSED**; and it is further

**ORDERED** that Doe Defendants are **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to terminate Defendants Bezio and Taft and the Doe Defendants as defendants in this case.

**IT IS SO ORDERED.**

Dated: August 14, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge